UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FILED - USDC - FLMD - FTM
AUG 17 2026 AM11:58

ALEK MIRKO MASON and
ELENA YANCHEVA YANEVA,

Plaintiffs,

v. Case No. 2:26-CV-2259-KCD-NPM

LEE FOUNDERS WAY, LLC;
ECI MANAGEMENT, LLC;
RENTDEBT AUTOMATED COLLECTIONS, LLC;

Defendants.
_______________________________/

**ORIGINAL COMPLAINT FOR DAMAGES AND**

**DEMAND FOR JURY TRIAL**

## I. INTRODUCTION

1. This action arises from the handling of Plaintiffs' residential tenancy at Waterline Bonita Springs; the response of Defendants LEE FOUNDERS WAY, LLC and ECI MANAGEMENT, LLC (collectively, the "Property Defendants") to reported apartment conditions and a disability-related request for early termination without penalty; the assessment

and collection of disputed move-out charges; and Defendant RENTDEBT AUTOMATED COLLECTIONS, LLC's subsequent collection activities and furnishing of the disputed collection account to Experian, Equifax, and TransUnion, where it appeared on the consumer credit reports of both Plaintiffs.

2. Plaintiffs leased the apartment as their personal residence under a written residential Lease Agreement commencing on January 14, 2025.

3. During the tenancy, Plaintiffs repeatedly notified Defendant ECI MANAGEMENT, LLC, the property manager and agent for Defendant LEE FOUNDERS WAY, LLC, of apartment and common-area conditions including persistent dust accumulation, visible mold, dead insect accumulation, HVAC-related concerns, repeated losses of hot water, and apparent mouse or other animal feces on and near pedestrian walkways that remained until Plaintiffs reported the condition to management.

4. Plaintiff Elena Yancheva Yaneva, a Stage IV melanoma survivor, experienced persistent eye and facial swelling and episodes of difficulty swallowing during the tenancy and sought repeated medical evaluation. Medical evaluation identified concerns involving mold and dust mites, and her physician ultimately recommended that she avoid dusty and moldy environments.

5. Plaintiffs requested an early termination of the Lease Agreement without penalty because of Plaintiff Yaneva's medical circumstances. Defendant ECI MANAGEMENT, LLC expressly advised Plaintiffs that it was unable to approve an early termination without penalty. After Plaintiffs supplied physician documentation, the Property Defendants did not reverse that position, grant the requested disability-related exception, or otherwise relieve Plaintiffs from the ordinary early-termination and continued-payment consequences.

6. Plaintiffs surrendered possession on November 27, 2025, identified the move as medically required, and requested that the Property Defendants accurately record the November 27

surrender and adjust the account accordingly. The Property Defendants instead assessed and maintained disputed move-out charges and, upon information and belief, one or both caused the disputed account to be referred for collection.

7. Defendant RENTDEBT AUTOMATED COLLECTIONS, LLC thereafter sought to collect an alleged balance of $723.91 and furnished the collection account to Experian, Equifax, and TransUnion. The collection appeared on the consumer credit reports of both Plaintiffs with each of the three nationwide consumer reporting agencies—six separate credit-report entries in total. After Plaintiffs directly disputed the debt in writing and supplied supporting documentation establishing the basis of their dispute, RENTDEBT failed to conduct a substantive investigation of the disputed charges and continued to identify the full $723.91 balance as due. In its July 23, 2026 response, RENTDEBT did not address Plaintiffs' specific objections to the underlying charges and instead stated that it would request that any collection account it had reported be listed as disputed with the consumer reporting agencies. RENTDEBT

nevertheless continued to treat the disputed balance as valid and collectible.

## II. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Count IV arises under the Fair Housing Act, 42 U.S.C. § 3601 et seq., and Count V arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

9. This Court has supplemental jurisdiction over Counts I through III pursuant to 28 U.S.C. § 1367(a) because those state-law claims form part of the same case or controversy as Plaintiffs' federal claims.

10. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District. The leased premises are located in Bonita Springs, Lee County, Florida; the Lease Agreement was performed in this District; Defendants LEE FOUNDERS WAY, LLC and ECI MANAGEMENT, LLC owned and/or managed the premises in this District; and the maintenance conditions,

accommodation request, surrender of possession, move-out accounting, disputed charges, and resulting collection account arose from the tenancy in this District.

## III. PARTIES

11. Plaintiff Alek Mirko Mason is a natural person and resident of Montgomery County, Texas. Mason was formerly legally known as Aleksandar Musulin, the name under which he executed the Lease Agreement, and was sometimes referred to as Alek Musulin. His legal name was subsequently changed to Alek Mirko Mason upon his naturalization as a United States citizen in 2025.

12. Plaintiff Elena Yancheva Yaneva is a natural person and a resident of Montgomery County, Texas.

13. Defendant LEE FOUNDERS WAY, LLC is a foreign limited liability company authorized to conduct business in Florida and, upon information and belief, owned Waterline Bonita Springs during all times relevant to this action.

14. Defendant ECI MANAGEMENT, LLC is a Georgia limited liability company registered to transact business in Florida

under the alternate name ECI MANAGEMENT - FL, LLC and acted as property manager and agent for Defendant LEE FOUNDERS WAY, LLC at Waterline Bonita Springs. ECI administered Plaintiffs' tenancy, received and processed Plaintiffs' rent payments, operated the tenant maintenance process, received Plaintiffs' maintenance and medical communications, addressed Plaintiffs' request for early termination, transmitted the move-out accounting, communicated the decision to maintain disputed charges, and advised that the account would be sent to collections if unpaid.

15. Defendant RENTDEBT AUTOMATED COLLECTIONS, LLC is a limited liability company engaged in the business of collecting consumer debts and, at all times relevant to the FDCPA claim asserted in Count V, acted as a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

16. When an allegation concerns conduct attributable to both Property Defendants, Plaintiffs use that collective term. Allegations concerning conduct attributable specifically to one entity identify that Defendant individually.

17. The Lease Agreement identifies ECI MANAGEMENT, LLC as the manager, and the Lease Agreement provides that written or electronic notice to or from the manager constitutes notice to or from the owner. Accordingly, notices delivered to ECI concerning the tenancy were notices to Defendant LEE FOUNDERS WAY, LLC under the Lease Agreement.

18. At all times material to this action, each Defendant acted through its officers, employees, agents, representatives, and other persons acting within the course and scope of their authority.

## IV. FACTUAL CHRONOLOGY OF RELEVANT EVENTS

19. On January 14, 2025, Plaintiffs entered into the written residential Lease Agreement with Defendant LEE FOUNDERS WAY, LLC for Apartment 6-203 at Waterline Bonita Springs in Bonita Springs, Lee County, Florida. Plaintiff Mason executed the Lease Agreement under his then-legal name, Aleksandar Musulin. The initial lease term ended January 12, 2026.

20. At the inception of the tenancy, Plaintiffs and Defendant LEE FOUNDERS WAY, LLC selected Choice 1 in the Lease's "Choice of Damages, Early Termination of Lease Contract" Addendum. The selected provision stated a $3,258.00 liquidated-damages or early-termination amount and provided that the Owner could recover rent and other charges accrued through the end of the month in which it retook possession, while waiving the right to seek additional rent beyond that month.

21. Plaintiffs temporarily relocated to Florida in connection with the acquisition and operation of a business located in Southwest Florida.

22. Plaintiffs continuously maintained ownership of their residence in Conroe, Texas throughout the tenancy. They did not list that residence for sale or rent it to others and intended to return to Texas following their temporary business activities in Florida.

23. The Lease Agreement identified Plaintiffs individually as the residents. Plaintiff Mason's company was not a resident

or tenant under the Lease Agreement and was not contractually obligated under the Lease Agreement.

24. Plaintiffs occupied the Waterline apartment as their personal residence.

25. During the tenancy, Plaintiff Yaneva spent a substantial portion of her time inside the apartment while performing administrative and investigative work related to Plaintiff Mason's recently acquired business in Southwest Florida.

26. During the tenancy, Plaintiff Yaneva experienced persistent facial swelling, eye swelling, and episodes of difficulty swallowing, for which she sought repeated medical evaluation.

27. Throughout the tenancy, Plaintiffs submitted numerous maintenance requests through the tenant portal administered by Defendant ECI MANAGEMENT, LLC concerning conditions encountered within the apartment.

28. As the tenancy progressed, Plaintiffs observed persistent dust accumulation, visible mold, HVAC-related concerns,

intermittent loss of hot water, insects, and other apartment conditions requiring maintenance attention.

29. Plaintiffs documented apartment conditions through photographs and repeatedly communicated maintenance concerns to ECI through the tenant portal and other written communications.

30. Plaintiffs also repeatedly observed and reported apparent mouse or other animal feces near common-area walkways used by residents. The condition was visible, unsanitary, and had not been removed by onsite maintenance personnel before Plaintiffs brought it to management's attention. Plaintiffs reported the condition to ECI on multiple occasions.

31. During Plaintiff Yaneva's medical evaluations, concerns involving mold and dust mites were identified. Her treating physician recommended that she avoid dusty and moldy environments.

32. On November 7, 2025, shortly before the medical and environmental concerns caused Plaintiffs to change course,

Plaintiffs advised ECI that they were willing to continue residing at the apartment on a month-to-month basis or through a three-month extension if the parties could agree upon a lower rental rate, proposing a maximum rental rate of $1,300 per month.

33. The discovery of substantial dust accumulation on the apartment's HVAC air filter, together with visible mold and dead insects previously discovered in the HVAC ducting and elsewhere in the apartment, materially changed Plaintiffs' understanding of the apartment's environmental conditions and their potential significance to Plaintiff Yaneva's ongoing symptoms.

34. As Plaintiffs continued observing the apartment conditions and obtaining medical information, they became increasingly concerned that continued occupancy was unreasonable in light of Plaintiff Yaneva's medical circumstances.

35. On or about November 13, 2025, Plaintiffs notified Defendant ECI MANAGEMENT, LLC that they intended to vacate before expiration of the Lease Agreement and

requested early termination without penalty. ECI responded that it was "unable to approve an early termination without penalty" and advised that Plaintiffs otherwise remained responsible for rent through January 12, 2026 or for applicable early-termination charges.

36. On November 15, 2025, Plaintiff Yaneva's physician provided written medical documentation stating that she had been treated for eye and facial swelling for approximately ten months and recommending that she avoid dusty and moldy environments. Plaintiffs provided that documentation to ECI.

37. After receiving the physician documentation, the Property Defendants did not grant an exception from their ordinary early-termination and continued-payment policies based on Plaintiff Yaneva's medical circumstances.

38. On November 25, 2025, ECI advised Plaintiffs that the apartment had been placed on notice with a scheduled move-out date of December 5, 2025 and would be marketed for re-leasing, but further stated that Plaintiffs remained

responsible for rent through January 12, 2026 unless a new renter took possession earlier.

39. On November 27, 2025, Plaintiffs vacated the apartment pursuant to Plaintiff Yaneva's physician's written recommendation, removed their personal belongings, left the keys and access fob inside the apartment, and surrendered possession.

40. That same day, Plaintiffs advised ECI in writing that the move was a medically required early vacate, requested that ECI update its records to reflect surrender of possession on November 27, 2025, and requested that the account be adjusted accordingly.

41. On or about December 10, 2025, ECI, acting on behalf of Defendant LEE FOUNDERS WAY, LLC, transmitted a move-out accounting asserting that Plaintiffs owed approximately $2,532.91 and offered payment arrangements.

42. The move-out accounting included, among other items, $1,629.00 in December rent, $630.58 identified as rent for January 1 through January 12, 2026, $105.00 characterized

as "Damage - Clean (Deep Clean)," and $75.00 characterized as "Trash Out - 3 bags @ $25.00 each."

43. Plaintiffs caused no physical damage to the apartment. They dispute the characterization of ordinary turnover cleaning as tenant-caused damage and dispute that the apartment reasonably required three bags of trash removal. Plaintiffs acknowledge that, at most, a small quantity of papers or miscellaneous refuse remained because it would not fit in the interior trash receptacle.

44. Plaintiffs timely disputed the asserted move-out charges in writing and explained the factual basis for their dispute, including the maintenance history, medical documentation, physician recommendation, medical basis for early vacatur, and the requested adjustment of the account.

45. On or about February 5, 2026, ECI advised Plaintiffs that, after consultation with the Property Manager, the disputed charges would remain unchanged. ECI further advised that, if payment was not received, the account would be sent to collections.

46. Plaintiffs continued disputing the alleged debt.

47. Thereafter, upon information and belief, one or both of the Property Defendants, acting independently or jointly, referred the disputed account to Defendant RENTDEBT AUTOMATED COLLECTIONS, LLC for collection.

48. On July 16, 2026, Plaintiffs obtained their consumer credit reports from Experian, Equifax, and TransUnion. Each Plaintiff's report from each of the three nationwide consumer reporting agencies reflected a collection account attributed to Defendant RENTDEBT AUTOMATED COLLECTIONS, LLC—six separate credit-report entries in total.

49. On July 16, 2026, Plaintiffs submitted a detailed written dispute directly to RENTDEBT disputing the alleged Waterline debt in its entirety. They advised RENTDEBT that the move-out charges had been disputed before referral, enclosed the prior dispute and response, denied owing the reported balance, and demanded cessation of collection and deletion of the collection tradelines.

50. On July 23, 2026, RENTDEBT responded in writing. Its response continued to identify Waterline Bonita Springs as the creditor and $723.91 as the "Amount Due," transmitted additional account documents, declined to remove the account, and stated that any RentDebt reporting would be requested to reflect the account as disputed.

51. RENTDEBT did not conduct a substantive investigation addressing Plaintiffs' specific factual and legal objections to the underlying move-out charges. Its July 23 response did not explain why the full $723.91 remained legally due notwithstanding those objections and instead stated that any collection account it had reported would be requested to reflect the account as disputed.

52. As a result of the conduct alleged in this Complaint, Plaintiffs have incurred disputed charges, collection and credit-reporting consequences, loss of time, out-of-pocket expenses, emotional distress, and other damages to the extent recoverable under the claims asserted below.

## V. COUNT I
## Breach of Residential Lease
## Against Defendant LEE FOUNDERS WAY, LLC

53. Plaintiffs and Defendant LEE FOUNDERS WAY, LLC entered into the written residential Lease Agreement commencing January 14, 2025.

54. The Lease Agreement provides that written or electronic notice to or from the manager constitutes notice to or from the owner. ECI MANAGEMENT, LLC served as the property manager and agent for LEE FOUNDERS WAY, LLC and received Plaintiffs' maintenance and tenancy communications.

55. The Lease Agreement incorporated a Mold Information and Prevention Addendum that instructed residents to provide written notice of specified visible mold conditions and provided that, upon such notice, the owner or management would "take appropriate action."

56. Plaintiffs repeatedly provided ECI written notice concerning apartment conditions, including persistent dust accumulation, visible mold, dead insects and debris

associated with the HVAC system, and related HVAC concerns. Under the Lease Agreement, those notices constituted notice to LEE FOUNDERS WAY, LLC.

57. Despite that notice, Defendant LEE FOUNDERS WAY, LLC, acting through its manager and agent, failed to take adequate and appropriate action concerning the reported mold-related and HVAC conditions before Plaintiffs surrendered possession.

58. The Lease Agreement permits reasonable cleaning charges when a resident fails to clean adequately and permits charges for tenant-caused damage where applicable. The Property Defendants nevertheless assessed $105.00 as "Damage - Clean (Deep Clean)" even though Plaintiffs allege they caused no physical damage and that the charge reflected ordinary turnover cleaning rather than tenant-caused damage or a reasonable charge for inadequate cleaning.

59. The Property Defendants separately assessed $75.00 for three bags of trash removal. Plaintiffs allege that, at most, a

small quantity of papers or miscellaneous refuse remained and dispute that three bags of removal were required or that the assessed amount was justified by the condition of the apartment.

60. Under the selected Choice 1 Addendum and Fla. Stat. § 83.595(4), Defendant LEE FOUNDERS WAY, LLC waived the right to seek additional rent beyond the month in which it retook possession. Plaintiffs allege that they surrendered possession and notified ECI of that surrender on November 27, 2025; on that basis, the $1,629.00 December rent charge and the $630.58 charge for January 1 through January 12, 2026 extended beyond the month in which possession was returned. ECI's own move-out accounting subsequently identified December 5, 2025 as the recorded "Move Out" date. Even using that date, the January 1 through January 12, 2026 rent charge extended beyond the month in which possession was returned or retaken and was not authorized by the selected Choice 1 provision.

61. Plaintiffs disputed the move-out charges in writing and supplied the Property Defendants with the factual basis for the dispute. Defendant LEE FOUNDERS WAY, LLC, acting through ECI, nevertheless maintained the disputed charges.

62. Defendant LEE FOUNDERS WAY, LLC materially breached the Lease Agreement by failing to take appropriate action concerning reported apartment conditions after receiving the notice contemplated by the Lease Agreement and its incorporated Mold Information and Prevention Addendum and by assessing and maintaining charges that Plaintiffs allege were not authorized by the Lease Agreement, including the disputed December 2025 and January 1 through January 12, 2026 rent charges under the selected Choice 1 Addendum and the disputed cleaning and trash-removal charges.

63. As a direct and proximate result of Defendant LEE FOUNDERS WAY, LLC's material breaches, Plaintiffs suffered damages including improperly assessed charges, loss of time and expenses incurred disputing those charges,

and consequential collection and credit-related damages to the extent proven and recoverable under Florida law.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendant LEE FOUNDERS WAY, LLC for compensatory damages, taxable costs, pre-judgment and post-judgment interest as permitted by law, and such other relief as the Court deems just and proper.

## VI. COUNT II
## Violation of Florida Residential Landlord and Tenant Act Fla. Stat. §§ 83.51, 83.54, and 83.55 Against Defendant LEE FOUNDERS WAY, LLC

64. Defendant LEE FOUNDERS WAY, LLC was Plaintiffs' landlord within the meaning of the Florida Residential Landlord and Tenant Act and owned the dwelling throughout the tenancy.

65. Fla. Stat. § 83.51(1)(a) required Defendant LEE FOUNDERS WAY, LLC, at all times during the tenancy, to comply with applicable building, housing, and health codes. Unless otherwise agreed in writing, § 83.51(2)(a) additionally required the landlord to make reasonable provisions for the extermination of rats and mice, the clean

and safe condition of common areas, and functioning facilities for running water and hot water.

66. Plaintiffs repeatedly gave written notice through Defendant ECI MANAGEMENT, LLC, the landlord's manager and agent, of conditions affecting the apartment and common areas, including persistent dust accumulation, visible mold, HVAC-related conditions, intermittent loss of hot water, apparent mouse or other animal feces near common-area walkways, and other maintenance problems. Under the Lease Agreement, notice to ECI constituted notice to Defendant LEE FOUNDERS WAY, LLC.

67. Plaintiffs allege that, after receiving repeated written notice, Defendant LEE FOUNDERS WAY, LLC failed to adequately address continuing apartment conditions to the extent required by applicable building, housing, or health codes under Fla. Stat. § 83.51(1)(a), failed to make reasonable provision for the clean and safe condition of common areas, including the repeatedly reported apparent animal feces near pedestrian walkways, and separately failed to make

reasonable provision for functioning hot-water facilities as required by § 83.51(2)(a).

68. Fla. Stat. § 83.54 makes rights and duties declared in the Florida Residential Landlord and Tenant Act enforceable by civil action, and Fla. Stat. § 83.55 permits an aggrieved party to recover damages caused by a landlord's noncompliance with the Act.

69. This Count seeks damages for alleged noncompliance with Fla. Stat. § 83.51 and does not rely upon the separate statutory lease-termination procedure provided by Fla. Stat. § 83.56(1).

70. As a direct and proximate result of the statutory noncompliance alleged in this Count, Plaintiffs suffered damages including loss of use and enjoyment during periods of noncompliance, moving and other out-of-pocket expenses, loss of time, and such other damages as are proven and recoverable under Florida law.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendant LEE FOUNDERS

WAY, LLC for compensatory damages under Fla. Stat. §§ 83.54 and 83.55, taxable costs, pre-judgment and post-judgment interest as permitted by law, and such other relief as the Court deems just and proper.

## VII. COUNT III
## Negligence - Negligent Undertaking of Maintenance and Repair
## Against Defendant ECI MANAGEMENT, LLC

71. Defendant ECI MANAGEMENT, LLC served as property manager and agent for Waterline Bonita Springs and undertook responsibility for receiving, processing, arranging, and responding to Plaintiffs' maintenance requests and for coordinating investigation, repair, or corrective action concerning reported apartment conditions.

72. By undertaking those maintenance and repair functions and exercising control over the process by which reported conditions were investigated and addressed, ECI assumed a duty under Florida law to exercise reasonable care in performing those functions. See *Muchnick v. Goihman*, 245 So. 3d 978, 981 (Fla. 3d DCA 2018).

73. Plaintiffs repeatedly notified ECI through its tenant-maintenance system and written communications of conditions requiring investigation or corrective action, including persistent dust accumulation, visible mold, dead insects and debris associated with the HVAC system, related HVAC concerns, intermittent loss of hot water, apparent mouse or other animal feces near common-area walkways, and other maintenance conditions.

74. ECI additionally received written physician documentation on November 15, 2025 advising that Plaintiff Yaneva had been treated for persistent eye and facial swelling and recommending that she avoid dusty and moldy environments. That documentation placed ECI on notice that the reported environmental conditions had potential significance to Plaintiff Yaneva's physical health.

75. Despite the repeated maintenance reports and the physician documentation, ECI failed to exercise reasonable care in adequately investigating, addressing, and correcting the

reported mold-related, dust-related, and HVAC conditions while Plaintiffs remained in the apartment.

76. The duty alleged in this Count arises from ECI's own undertaking and control of the maintenance and repair functions described above and is asserted independently of Plaintiffs' contractual claim against Defendant LEE FOUNDERS WAY, LLC.

77. As a direct and proximate result of ECI's negligent performance of the maintenance and repair functions it undertook, Plaintiff Yaneva suffered physical harm, including aggravation of her physical symptoms, to the extent proven, and Plaintiffs incurred resulting moving and other out-of-pocket expenses, loss of time, and other damages recoverable under Florida law.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendant ECI MANAGEMENT, LLC for compensatory damages, taxable costs, pre-judgment and post-judgment interest as permitted by law, and such other relief as the Court deems just and proper.

## VIII. COUNT IV
## Fair Housing Act - Failure to Make Reasonable Accommodation
## 42 U.S.C. § 3604(f)(3)(B)
## Against Defendants LEE FOUNDERS WAY, LLC and ECI MANAGEMENT, LLC

78. The Fair Housing Act defines prohibited disability discrimination to include a refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a person with a disability an equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(3)(B).

79. Plaintiff Yaneva is a person with a disability within the meaning of 42 U.S.C. § 3602(h). She is a Stage IV melanoma survivor whose cancer and treatment resulted in the complete surgical removal of her left breast and lasting physical impairments associated with her cancer and treatment. She therefore has a record of a physical impairment that substantially limited one or more major life activities. During the tenancy, she additionally experienced persistent eye and facial swelling and episodes of difficulty

swallowing and received medical treatment for those conditions.

80. Plaintiff Mason has been Plaintiff Yaneva's spouse since 2014 and was a co-tenant under the Lease Agreement. He communicated with the Property Defendants concerning the requested accommodation on her behalf. Both Plaintiffs were personally obligated under the Lease Agreement and were subjected to the charges and collection consequences alleged herein.

81. Defendant LEE FOUNDERS WAY, LLC owned the dwelling, and Defendant ECI MANAGEMENT, LLC managed the property, administered Plaintiffs' tenancy, received rent, handled maintenance requests, and made or communicated decisions concerning Plaintiffs' requested early termination and move-out obligations.

82. On or about November 13, 2025, ECI understood Plaintiffs to be requesting an early termination without penalty and expressly responded that it was "unable to approve an early termination without penalty."

83. On November 15, 2025, Plaintiffs supplied ECI with physician documentation establishing a medical basis for avoiding dusty and moldy environments. This documentation supplemented the Property Defendants' existing knowledge of Plaintiffs' reported apartment conditions and provided a disability-related basis for the requested exception from the ordinary early-termination and continued-payment policies. By that point, the Property Defendants had sufficient information from Plaintiffs' communications and the physician documentation to understand that the requested exception was based upon Plaintiff Yaneva's physical impairment and medically documented need to avoid the reported environment.

84. After receiving the physician documentation, the Property Defendants did not grant the requested exception, waive the ordinary early-termination consequences, or propose an alternative accommodation that addressed Plaintiff Yaneva's need to avoid the environment identified by her physician.

85. Instead, on November 25, 2025, ECI reiterated that Plaintiffs remained responsible for rent through January 12, 2026 unless the apartment was re-rented earlier.

86. On November 27, 2025, Plaintiffs advised ECI that they had surrendered possession pursuant to the physician's recommendation, identified the move as a medically required early vacate, and requested an adjustment of the account to reflect the actual surrender date and the requested disability-related accommodation.

87. The requested accommodation - allowing Plaintiffs to terminate the tenancy without the ordinary penalty or continuing-rent consequences because Plaintiff Yaneva medically needed to avoid the reported environment - was reasonable and was directly related to the disability-related need communicated to the Property Defendants.

88. The requested accommodation was necessary to permit Plaintiff Yaneva to comply with her physician's recommendation without incurring the ordinary financial

consequences that the Property Defendants imposed on residents who left before lease expiration.

89. The Property Defendants refused the requested accommodation by maintaining the ordinary early-termination and continued-payment consequences after receiving the medical documentation and by subsequently assessing and maintaining charges arising from Plaintiffs' early surrender of possession.

90. By refusing to make the requested reasonable accommodation, Defendants LEE FOUNDERS WAY, LLC and ECI MANAGEMENT, LLC violated 42 U.S.C. § 3604(f)(3)(B).

91. As a direct and proximate result of the discriminatory housing practice alleged in this Count, Plaintiffs suffered actual damages including disputed rental and move-out charges, collection and credit-reporting consequences, out-of-pocket expenses, loss of time, and emotional distress to the extent proven.

92. Pursuant to 42 U.S.C. § 3613(c), Plaintiffs seek actual damages and, to the extent supported by the evidence, punitive damages and appropriate equitable relief.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants LEE FOUNDERS WAY, LLC and ECI MANAGEMENT, LLC for actual damages, punitive damages to the extent permitted and proven, taxable costs, appropriate equitable relief, and such other relief as the Court deems just and proper under the Fair Housing Act.

## IX. COUNT V
## Fair Debt Collection Practices Act
## 15 U.S.C. §§ 1692e(2)(A) and 1692f(1)
## Against Defendant RENTDEBT AUTOMATED COLLECTIONS, LLC

93. Defendant RENTDEBT AUTOMATED COLLECTIONS, LLC ("RAC") is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

94. The alleged Waterline obligation arose from a written residential lease executed by Plaintiffs in their individual capacities for a dwelling occupied as their personal residence

and therefore constitutes a consumer debt within the meaning of 15 U.S.C. § 1692a(5).

95. Before the account was referred to RAC, Plaintiffs had disputed the underlying move-out charges directly with the Property Defendants.

96. RAC sought to collect an alleged Waterline balance of approximately $724 and furnished collection information concerning the account to Experian, Equifax, and TransUnion. The resulting collection account appeared on each Plaintiff's consumer credit report with each of the three agencies—six separate credit-report entries in total—on reports obtained July 16, 2026. RAC later identified $723.91 as the amount due.

97. On July 16, 2026, Plaintiffs submitted a detailed written dispute directly to RAC, denied liability for the alleged balance, advised RAC that the charges had been disputed before referral, explained the factual basis for the dispute, and supplied copies of the prior dispute and response.

98. Plaintiffs' dispute placed RAC on actual notice of specific factual and legal challenges to the amount and legal status of the alleged debt, rather than merely asserting an unsupported refusal to pay.

99. On July 23, 2026, RAC responded by continuing to identify $723.91 as the "Amount Due" and transmitted documents concerning the account. RAC declined to remove the collection account and stated that any RAC reporting would be requested to show the account as disputed.

100. RAC's response did not withdraw or reduce the asserted amount based on Plaintiffs' specific objections and did not explain why the disputed rental, cleaning, and trash-related charges remained authorized by the Lease Agreement or otherwise legally collectible.

101. Upon information and belief, the $723.91 balance RAC represented as due was the remaining balance of the same Waterline account ledger that contained the disputed rental, cleaning, trash-removal, and early-surrender charges

described above, and continued to include one or more amounts Plaintiffs allege were not legally owed.

102. By representing that the full $723.91 was due and collectible when the balance included amounts Plaintiffs allege were not legally owed, RAC falsely represented the character, amount, or legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A).

103. By attempting to collect amounts that Plaintiffs allege were not expressly authorized by the agreement creating the debt or permitted by law, RAC violated 15 U.S.C. § 1692f(1).

104. As a direct and proximate result of RAC's violations, Plaintiffs suffered actual damages including damage to their consumer credit histories, loss of time, out-of-pocket expenses incurred attempting to correct their consumer credit files, and emotional distress to the extent proven.

105. Plaintiffs are also entitled to seek statutory damages and taxable costs under 15 U.S.C. § 1692k.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendant RENTDEBT

AUTOMATED COLLECTIONS, LLC for actual damages, statutory damages under 15 U.S.C. § 1692k, taxable costs, and such other relief as the Court deems just and proper.

## X. JURY DEMAND

106. Plaintiffs demand a trial by jury on all issues so triable.

Dated: August 10, 2026

Respectfully submitted,

Alek Mirko Mason
Plaintiff, pro se
14132 FM 1097 Road West
Suite 300 PMB 1030
Willis, Texas 77318
Telephone: (830) 830-6374
Email:
amason.litigation@gmail.com

Elena Yancheva Yaneva
Plaintiff, pro se
14132 FM 1097 Road West
Suite 300 PMB 1030
Willis, Texas 77318
Telephone: (830) 830-6374
Email:
amason.litigation@gmail.com